| | |
|---|---|
| **DISTRICT COURT, ARAPAHOE COUNTY, COLORADO**<br>Court Address:<br>7325 S Potomac St.<br>Centennial, CO 80112 | DATE FILED: June 24, 2016 11:19 PM<br>FILING ID: CF867F9F8F852<br>CASE NUMBER: 2016CV31378 |
| Plaintiffs:<br>**LEO LECH, ALFONSINA LECH, JOHN LECH, ANNA MUMZHIYAN,** individually, and on behalf of her minor son, **D.Z.**,<br><br>v.<br><br>Defendants: **CHIEF JOHN A. JACKSON of the Greenwood Village Police Department**, individually, and in his official capacity, **COMMANDER DUSTIN VARNEY of the Greenwood Village Police Department**, individually, and in his official capacity, **OFFICER MIC SMITH of the Greenwood Village Police Department**, individually, and in his official capacity**, OFFICER JEFF MULQUEEN of the Greenwood Village Police Department**, individually, and in his official capacity**, OFFICER AUSTIN SPEER of the Greenwood Village Police Department**, individually, and in his official capacity, **OFFICER JARED ARTHUR of the Greenwood Village Police Department,** individually, and in his official capacity, **OFFICER BRYAN STUEBINGER of the Greenwood Village Police Department,** individually, and in his official capacity, **OFFICER JUAN VILLALVA of the Greenwood Village Police Department,** individually, and in his official capacity, **OFFICER ANDY WYNDER of the Greenwood Village Police Department,** individually, and in his official capacity, **OFFICER ANTHONY COSTARELLA of the Greenwood Village Police Department,** individually, and in his official capacity, **OFFICER ROB HASCHE of the Greenwood Village Police Department**, individually, and in his official capacity, and the **CITY OF GREENWOOD VILLAGE**. | ▲ **COURT USE ONLY** ▲ |

| | |
|---|---|
| Attorneys for Plaintiffs:<br>Rachel B. Maxam<br>Law Office of Rachel B. Maxam, PLLC<br>1512 Larimer St., Ste. 600<br>Denver, CO 80202<br>Tel:  720-526-2928<br>Fax:  720-634-0643<br>Email:  rachel@maxamlawfirm.com<br>Attorney Reg. No. 47711<br><br>David K. Williams, Jr.<br>Williams Law Office LLC<br>PO Box 371416<br>Denver, CO 8237<br>Tel: 303-588-2731<br>Email: dave@dkwilliams.net<br>Attorney Reg. No. 34629 | Case Number: 2016CV031378<br><br>Division: 14 |
| **FIRST AMENDED COMPLAINT** | |

**COME NOW** Plaintiffs Leo Lech, Alfonsina Lech, John Lech, Anna Mumzhiyan, and D.Z. (collectively "***Plaintiffs***"), by and through their attorneys, and state the following in support of their *Complaint*:

## PARTIES

1. Plaintiffs Leo Lech and Alfonsina Lech presently and at all times pertinent to this action were residents of Douglas County, Colorado.

2. Plaintiffs John Lech, Anna Mumzhiyan, and D.Z. at all times pertinent to this action were residents of Arapahoe County, Colorado. Plaintiffs John Lech, Anna Mumzhiyan, and D.Z. are currently residents of Douglas County, Colorado.

3. Plaintiffs Leo Lech and Alfonsina Lech own property located at 4219 S. Alton St., Greenwood Village, Colorado, which formerly had a home standing on the property (the "***Lech Home***"). The Lech Home was a two-story home with over two thousand square feet of living space.

4. Plaintiffs John Lech, Anna Mumzhiyan, and D.Z. were formerly residents and tenants of the Lech Home prior to the incident complained of in this Complaint.

5. The individual Defendants are law enforcement officers for the City of Greenwood Village in Arapahoe County, Colorado (hereinafter, collectively the "***Law Enforcement Defendants***"). The City of Greenwood Village is a municipality in Arapahoe County, Colorado. Each defendant is a "person" as defined under 42 U.S.C. § 1983.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the subject matter at issue because, in part, this is a civil action for damages and equitable relief. Colo. Const. Art. VI, § 9(1). This Court has concurrent jurisdiction over the federal rights claims under 42 U.S.C. § 1983. Jurisdiction supporting Plaintiff's claim for attorneys' fees and costs is conferred by 42 U.S.C. § 1988.

7. Venue in this Court is proper because the actions and damages giving rise to this action occurred in Arapahoe County, Colorado.

## GENERAL ALLEGATIONS

8. On or about June 3, 2015, Robert Jonathan Seacat ("*Seacat*") shoplifted from a local Walmart. He fled the scene and was pursued by law enforcement.

9. Seacat fled into a nearby residential neighborhood and entered the Lech Home at random without the permission or consent of the Plaintiffs. Seacat was not known to the Plaintiffs and had no connection to them.

10. D.Z. was the only resident home at the time and was able to leave the Lech Home unharmed and within minutes of Seacat's entry into the home.

11. Over the course of June 3 and 4, 2015, a standoff between Seacat and law enforcement ensued for approximately 19 hours.

12. On or about June 3 and 4, 2015, Defendants used 40mm rounds, explosives, chemical agents (tear gas), flash-bang grenades, and other devices on and around the Lech Home in an attempt to flush out Seacat. At one point during the use of the flash-bang grenades, a badly thrown grenade bounced back and fell upon law enforcement, forcing them scatter.

13. Sixty-eight cold chemical munitions and 4 hot gas munitions were launched into the Lech Home. Chemical munitions of this nature pose a hazard to anyone directly exposed to them and in the surrounding area.

14. On information and belief, Chief John A. Jackson and/or Commander Dustin Varney of the Greenwood Village Police Department were the commanding officers at the scene and issued orders to members of the City of Greenwood Village Police Department, the Greenwood Village SWAT Team, and other law enforcement.

15. On information and belief, Officers Mic Smith, Jeff Mulqueen, Austin Speer, Jared Arthur, Bryan Stuebinger, Juan Villalva, Andy Wynder, Anthony Costarella, and Rob Hasche were the Greenwood Village Police officers and/or SWAT officers directly engaged in the destruction of the Lech Home.

16. The Defendants blasted holes in all windows and doors of the Lech Home. Rubble from the blasts was strewn about the property. The interior of the Lech Home was a mass of debris and destroyed belongings from the projectiles launched into the home by the Defendants. Chemical munitions or other projectiles were stuck in the walls. The Lech Home was completely uninhabitable and its condition posed a danger to anyone entering the home.

17. On or about June 4, 2015, approximately 19 hours after Seacat first entered the Lech Home, the standoff ended when the Defendants executed a forcible SWAT entry into the Lech Home using a battering ram and took Seacat into custody.

18. Plaintiffs John Lech, Anna Mumzhiyan, and D.Z. were told by the Defendants that they could return to the scene to pick up some of their belongings and that there was "some damage" to the Lech Home. They were never offered a place to stay that night and were never told that their home was completely destroyed requiring a new permanent place to live.

19. Plaintiffs John Lech, Anna Mumzhiyan, and D.Z. returned to the Lech Home and were horrified to find that the house had been completely destroyed by the Defendants. The personal belongings of Plaintiffs John Lech, Anna Mumzhiyan, and D.Z. were destroyed.

20. Upon returning to the scene, Anna Mumzhiyan was distraught and tried to enter the Lech Home. She was threatened with arrest.

21. No notice was given to the home owners, Leo and Alfonsina Lech, about what had happened.

22. The Lech Home was completely uninhabitable and had to be condemned by the City of Greenwood Village and completely rebuilt from the ground up.

23. John, Anna Mumzhiyan, and D.Z. lost all but a few of their personal belongings including clothing, toys, basic household items, furniture, appliances, and other personal effects.

24. The Plaintiffs spent countless hours clearing the rubble in and around the Lech Home in an attempt to recover personal belongings that were not destroyed.

25. Leo Lech's vehicle, which was being used by John Lech, was parked in the garage and was damaged as a result of the actions of the Defendants. The vehicle required immediate repair in order to be usable.

26. Neighbors' homes, windows, and vehicles were also damaged as a result of the actions of the Defendants.

27. The Defendants did not offer the Plaintiffs any sort of crisis assistance or counseling, assistance with finding new housing, or even informed them that the Lech Home was completely uninhabitable.

28. The Defendants did not provide the Plaintiffs with any assistance with recovering their personal belongings or ensuring their safety with entering the Lech Home.

29. The Defendants made little or no effort to clear the scene of projectiles and other hazards, including conducting any containment procedures for chemical agents. The Defendants did not even warn the Plaintiffs of the danger of re-entering the Lech Home and that it posed a multitude of known and unknown dangerous conditions or advise them of any precautions that needed to be taken with possible un-detonated ordinance or contamination from chemical agents.

30. A hypodermic needle containing an unknown dark substance, presumed to be an illegal narcotic used by Seacat, was later found by owner Leo Lech when the Plaintiffs were attempting to recover personal belongings that were not destroyed. Leo Lech was nearly stuck with the needle when moving a pile of rubble, but John Lech luckily spotted the needle before it made contact with Leo Lech. Law enforcement was notified and picked up the hypodermic needle.

31. On a second later occasion, John Lech picked up a second hypodermic needle with a pile of debris when he was sifting through debris for personal items and was also nearly stuck with the needle. Law enforcement was notified, but indicated that they did not want to pick up the hypodermic needle and told John Lech to dispose of it himself.

32. Unaware of any hazards with entering the Lech Home, the Plaintiffs suffered nausea and sinus congestion for several weeks following the incident.

33. Property inspectors who later inspected the scene showed up in full hazmat gear.

34. Because the Lech Home was uninhabitable, Plaintiffs John Lech, Anna Mumzhiyan, and D.Z. were forced to move in with Plaintiffs Leo and Alfonsina Lech in Douglas County approximately 30 miles south of the Lech Home because they could not afford to rent a comparable home for themselves and their two large dogs and replace all of their personal belongings. Leo and Alfonsina Lech had to remodel their home to accommodate John Lech, Anna Mumzhiyan, D.Z, and two large dogs.

35. Plaintiff John Lech was forced to take another job at a lower salary and in a lower position closer to Leo and Alfonsina Lech's home in Douglas County. Otherwise, the commute to his previous job in downtown Denver would have been 2 hours or more round trip every day.

36. D.Z. had to change schools and leave his friends because he was forced to move into Leo and Alfonsina's home in Douglas County and change school districts.

37. D.Z. has been in therapy as a result of trauma and stress from the sudden loss of his home, personal possession, withdrawal from extra-curricular activities, and change of schools.

38. A ring and family heirloom that survived through WWII Italy was never recovered from the Lech Home.

39. John Lech's two highly trained hunting dogs were in the backyard of the Lech Home when the standoff between Seacat and the Defendants ensued. John Lech invested a large of amount of time and money in training the dogs. John Lech was assured that the police would take care of his dogs and that the dogs' safety was one of their top priorities. One dog ran off when holes in the house were blown open and was found by a good Samaritan at a residence over six miles away and on the opposite side of I-25 from the Lech home. The other dog was present in the backyard during the entirety of the standoff. Both dogs were covered in tear gas and explosives residue and had to undergo an extensive washing by John Lech. The dogs may not be usable for hunting as a result the trauma they experienced.

40. The Defendants seized two firearms lawfully belonging to Leo and John Lech that were kept in a closet in the Lech Home and have refused to return them pending resolution of the criminal charges against Seacat.

41. The Plaintiffs suffered economic damages as a result of the Defendants' destruction of the Lech Home and the personal property inside.

42. The Plaintiffs suffered severe emotional damage and severe disruption to their lives and well-being as a result of the Defendants' conduct.

43. The City of Greenwood Village offered the Plaintiffs an unconscionable $5,000 in compensation for their losses. Defendants have refused to provide any significant or reasonable compensation to the Defendants.

44. The Defendants do not escape liability for their conduct because they are a government entity or employees of the government.

## COUNT I
## NEGLIGENCE

45. Plaintiffs hereby incorporate all preceding and subsequent allegations into this Count I.

46. On or about June 3 and 4, 2015, the Law Enforcement Defendants destroyed the Lech Home and the personal property inside.

47. The Law Enforcement Defendants owe the Plaintiffs a general duty to use reasonable care with regard to their conduct.

48. The Law Enforcement Defendants breached that duty when they willfully and wantonly destroyed the Lech Home.

49. The Law Enforcement Defendants breach of duty caused injury to the Plaintiffs.

50. As a result of the negligence of the Law Enforcement Defendants, the Plaintiffs suffered injuries and damages including, but not limited to: economic damages; non-economic damages; past, present, and future pain and suffering; past and future lost earnings; loss of earning capacity; loss of rental income; past, present and future medical expenses; emotional distress; loss of enjoyment of life; and other injuries in an amount to be proven at trial.

## COUNT II
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

51. Plaintiffs hereby incorporate all preceding and subsequent allegations into this Count II.

52. On or about June 3 and 4, 2015, the Law Enforcement Defendants engaged in conduct against the Plaintiffs by destroying the Lech Home.

53. The conduct of the Law Enforcement Defendants was willful and wanton.

54. The conduct of the Law Enforcement Defendants was extreme and outrageous.

55. The Law Enforcement Defendants engaged in such conduct intentionally or recklessly or with the intent of causing the Plaintiffs severe emotional distress.

56. The Law Enforcement Defendants' conduct caused the Plaintiffs to suffer severe emotional distress, and did cause the Plaintiffs to suffer injuries and damages, including, but not limited to, pain and suffering, mental distress, mental anguish, emotional anxiety, and loss of enjoyment and quality of life.

## COUNT III
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

57. Plaintiffs hereby incorporate all preceding and subsequent allegations into this Count III.

58. On or about June 3 and 4, 2015, the Law Enforcement Defendants engaged in conduct against the Plaintiffs by destroying the Lech Home.

59. The conduct of the Law Enforcement Defendants was willful and wanton.

60. The Law Enforcement Defendants' conduct subjected the Plaintiffs to an unreasonable risk of bodily harm and caused the Plaintiffs to be put in fear of their own safety which resulted in severe emotional distress to the Plaintiffs.

61. The Law Enforcement Defendants' conduct caused the Plaintiffs to suffer severe emotional distress, and did cause the Plaintiffs to suffer injuries and damages, including, but not limited to, pain and suffering, mental distress, mental anguish, emotional anxiety, and loss of enjoyment and quality of life.

## COUNT IV
## TRESPASS

62. Plaintiffs hereby incorporate all preceding and subsequent allegations into this Count IV.

63. Plaintiffs Leo Lech and Alfonsina Lech owned the Lech Home and had a right to legal possession at all times relevant this Complaint.

64. Plaintiffs John Lech, Anna Mumzhiyan, and D.Z. occupied the Lech Home prior to on or about June 3 and 4, 2015 and had a possessory interest in the Lech Home at all times relevant to this Complaint.

65. On or about June 3 and 4, 2015, the Defendants physically intruded on the Plaintiffs' property by intentionally causing explosives, chemical agents (tear gas), flash-bang grenades, and other devices to enter into the Lech Home and the surrounding property owned and occupied by the Plaintiffs.

66. The Defendants intruded on the Plaintiffs' property by using explosives, chemical agents (tear gas), flash-bang grenades and other devices on the Lech Home and the surrounding property without legal right and without Plaintiffs' consent. This conduct by the Defendants constituted a trespass.

67. The Defendants' conduct was willful, wanton, and reckless.

68. As a result of Defendants' entry onto the Plaintiffs' property, the Plaintiffs have sustained and will continue to sustain substantial damages which are impossible to quantify at this time.

69. Plaintiffs have no plain, speedy, and adequate remedy at law.

## COUNT V
## TAKING WITHOUT JUST COMPENSATION IN VIOLATION OF THE COLORADO CONSTITUTION

70. Plaintiffs hereby incorporate all preceding and subsequent allegations into this Count V.

71. Defendants to this claim, at all relevant times hereto, were acting under the color of state law.

72. The conduct of the Defendants, as set forth above, deprived the Plaintiffs of the possession, use, and enjoyment of their property.

73. Article II, § 15 of the Colorado Constitution prohibits the damaging or taking of private property for public use without just compensation.

74. The conduct of the Defendants, as set forth above, is the taking or damage of private property for public use.

75. Plaintiffs have not received just compensation from the Defendants pursuant to the Colorado Constitution.

76. The actions of the Defendants in taking and/or damaging the Plaintiffs' property, as set forth above, violates Article II, § 15 of the Colorado Constitution.

77. Plaintiffs have suffered damages as a result of said constitutional violation, including loss of liberty, economic damages; non-economic damages; past, present, and future pain and suffering; past and future lost earnings; loss of earning capacity; loss of rental income; past, present and future medical expenses; emotional distress; loss of enjoyment of life; and other injuries.

78. Defendants are liable in damages to Plaintiffs in an amount to be proven at trial.

## COUNT VI
## PURSUANT TO 42 U.S.C. § 1983 FOR A TAKING WITHOUT JUST COMPENSATION IN VIOLATION OF THE FIFTH AMENDMENT TO THE U.S. CONSTITUTION

79. Plaintiffs hereby incorporate all preceding and subsequent allegations into this Count VII.

80. Defendants to this claim, at all relevant times hereto, were acting under the color of state law.

81. The conduct of the Defendants, as set forth above, deprived the Plaintiffs of the possession, use, and enjoyment of their property.

82. The Fifth Amendment to the U.S. Constitution provides that private property cannot be taken for public use without just compensation.

83. Chief John A. Jackson and/or Commander Dustin Varney acted in a supervisory capacity over members of the City of Greenwood Village Police and other law enforcement officers. The actions and/or inactions by Chief John A. Jackson and/or Commander Dustin Varney over the actions of their subordinates, including, but not limited to the other named Law Enforcement Defendants, resulted in a deprivation of Plaintiffs' rights under the U.S. Constitution.

84. Chief John A. Jackson and/or Commander Dustin Varney were the final policy-makers and approved the actions of law enforcement on behalf of the City of Greenwood Village.

85. The City of Greenwood Village has ratified the actions taken by law enforcement, including the Law Enforcement Defendants, by virtue of the City of Greenwood Village's affirmation and defense of those actions.

86. The City of Greenwood Village has maintained that the actions of law enforcement, including the Law Enforcement Defendants, were consistent with the policy, procedures, customs, and practices of the City of Greenwood Village and its law enforcement officers.

87. The conduct of the Defendants, as set forth above, is the taking of private property for public use.

88. Plaintiffs have not received just compensation from the Defendants pursuant to the U.S. Constitution.

89. The actions of the Defendants in taking of the Plaintiffs' property, as set forth above, violates the Fifth and Fourteenth Amendments to the U.S. Constitution.

90. Plaintiffs have suffered damages as a result of said constitutional violation, including loss of liberty, economic damages; non-economic damages; past, present, and future pain and suffering; past and future lost earnings; loss of earning capacity; loss of rental income; past, present and future medical expenses; emotional distress; loss of enjoyment of life; and other injuries.

91. Defendants are liable in damages to Plaintiffs in an amount to be proven at trial.

## COUNT VII
## PURSUANT TO 42 U.S.C. § 1983 FOR DEPRIVATION OF PROPERTY WITHOUT DUE PROCESS OF LAW IN VIOLATION OF THE FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION AND ARTICLE II, § 25 OF THE COLORADO CONSTITUTION

92. Plaintiffs hereby incorporate all preceding and subsequent allegations into this Count VII.

93. All Defendants to this claim, at all relevant times hereto, were acting under the color of state law.

94. Chief John A. Jackson and/or Commander Dustin Varney acted in a supervisory capacity over members of the City of Greenwood Village Police and other law enforcement officers. The actions and/or inactions by Chief John A. Jackson and/or Commander Dustin Varney over the actions of their subordinates, including, but not limited to the other named Law Enforcement Defendants, resulted in a deprivation of the Plaintiffs' rights under the U.S. Constitution.

95. Chief John A. Jackson and/or Commander Dustin Varney were the final policy-makers and approved the actions of law enforcement on behalf of the City of Greenwood Village.

96. The City of Greenwood Village has ratified the actions taken by law enforcement, including the Law Enforcement Defendants, by virtue of the City of Greenwood Village's affirmation and defense of those actions.

97. The City of Greenwood Village has maintained that the actions of law enforcement, including the Law Enforcement Defendants, were consistent with policy, procedures, customs, and practices of the City of Greenwood Village and its law enforcement officers.

98. Defendants violated Plaintiffs' rights under the Fifth and Fourteenth Amendment of the U.S. Constitution and Article II, § 25 of the Colorado Constitution to be free from the taking of property without due process of law.

99. Plaintiffs have suffered damages as a result of such constitutional violations, including loss of liberty, economic damages; non-economic damages; past, present, and future pain and suffering; past and future lost earnings; loss of earning capacity; loss of rental income; past, present and future medical expenses; emotional distress; loss of enjoyment of life; and other injuries.

100. Defendants are liable in damages to Plaintiffs in an amount to be proven at trial.

## COUNT VIII
## 42 U.S.C. § 1988

101. Plaintiffs hereby incorporate all preceding and subsequent allegations into this Count VIII.

102. Pursuant to 42 U.S.C. § 1988, prevailing plaintiffs in an action under 42 U.S.C. § 1983 are entitled to judgment against the defendants for the amount of attorneys' fees incurred by the plaintiffs in pursuing the action.

103. Plaintiffs have incurred and will continue to incur attorneys' fees in pursuit of their claims under 42 U.S.C. § 1983.

104. The Defendants are liable to Plaintiffs for the attorneys' fees incurred by Plaintiffs in pursuit of their claims under 42 U.S.C. § 1983, in an amount to be proven at trial.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment in Plaintiffs favor and against Defendants as follows:

1. Such damages as this court may deem just and proper;
2. Damages for all past and future damages to Plaintiffs caused by Defendants' intrusion onto Plaintiffs' property;
3. Damages for the taking of Plaintiffs' property;
4. Punitive damages;
5. Reasonable attorneys' fees;
6. Expert witness fees;
7. Costs of this action;
8. Pre-judgment and post-judgment interest on any award of damages to the extent permitted by law; and
9. Such other and further relief as this Court deems just and proper.

Dated this 24th day of June, 2016.

LAW OFFICE OF RACHEL B. MAXAM, PLLC

/s/ *Rachel B. Maxam*
_____
Rachel B. Maxam, Esq.
Law Office of Rachel B. Maxam, PLLC
1512 Larimer St., Ste. 600

        Denver, CO 80202

        /s/ *David K. Williams, Jr.*
        _____

        David K. Williams, Jr.
        The Williams Law Office LLC
        PO Box 371416
        Denver, CO 80237

Plaintiffs Leo and Alfonsina Lech's address:
3787 W. Dawson Rd.
Sedalia, CO 80135

Plaintiff John Lech's address:
3787 W. Dawson Rd.
Sedalia, CO 80135

Plaintiffs Anna Mumzhiyan and D.Z.'s address:
355 E Allen St.
Apt #15
Castle Rock, CO 80108